The Full Commission's initial Opinion and Award was filed 22 May 1998 and is now amended to correct the clerical error in Finding of Fact (16). The remainder of the prior Opinion and Award is unchanged.
 ***********
The Full Commission has reviewed the prior Opinion and Award based on the record of the proceedings before Deputy Commissioner Kim L. Cramer and the briefs and oral arguments on appeal. The appealing party has not shown good ground to receive further evidence or to reverse the holding of the Deputy Commissioner. However, the Full Commission, pursuant to its authority under G.S. § 97-85, has modified the prior Opinion and Award regarding the period to which plaintiff is entitled to temporary total disability compensation and to allow a credit in defendant's favor against the wages plaintiff was able to earn in December 1995 and January 1996.
 **********
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing on 24 September 1996 as:
 STIPULATIONS
1. The parties are subject to and bound by the North Carolina Workers' Compensation Act.
2. An employee-employer relationship existed between plaintiff-employee and defendant-employer at all relevant times herein.
3. Defendant-employer is a qualified self-insured with The Goff Group as servicing agent.
4. Plaintiff's average weekly wage on 16 November 1995 may be determined from the Form 22 wage chart.
5. The issue before the Commission is whether plaintiff sustained an injury by accident or occupational disease on or about 16 November 1995.
 ***********
The Full Commission adopts the findings of fact found by the Deputy Commissioner and finds as follows:
 FINDINGS OF FACT
1. Plaintiff is a male who was 43 years of age on the date of hearing before the Deputy Commissioner. Prior to 15 November 1995, plaintiff had worked for defendant for approximately four years, doing "springup" work, which involved attaching springs to frames for chairs, love seats, and sofas.
2. In his job plaintiff used various tools which he would grip or squeeze. Plaintiff used a clinch gun which he held in his palm and would squeeze to attach the springs to the frame. The gun was used 3 to 5 times per spring. There were 27 springs in a sofa, 18 in a love seat, and 9 in a chair. Each spring weighs about a pound or more.
3. Plaintiff would hand-tie the springs together using nylon cord using about 8 knots per spring. He used a tack hammer to secure the springs with nails. Plaintiff secured an edge wire around the top edge of the springs. Finally, plaintiff used a staple gun to attach burlap to the bottom of the furniture. Plaintiff's tasks required repetitive use of his hands and upper extremities. Plaintiff installed springs in about 46 pieces of furniture during an 8 to 10 hour day, working 5 to 6 days per week.
4. For a couple of months prior to 15 November 1995, plaintiff had experienced paresthesia and some pain in his right hand, especially the thumb, first, second, third and fourth fingers. He experienced these symptoms after working all day, and sometimes had difficulty sleeping.
5. On 15 November 1995, while plaintiff was working, he was pushing a sofa frame he had completed, which was standing on end, into a line of frames, when it started to fall over. Plaintiff grabbed the sofa frame to try to hold it and prevent it from knocking down the line of frames. As plaintiff grabbed the frame, his left hand pulled loose, such that the frame's weight was being supported by his right side, and plaintiff was twisted sideways. Plaintiff experienced an immediate onset of pain in his right side, from his neck into his shoulder and right arm.
6. Immediately after the sofa incident, plaintiff reported it to Ricky Cannon, his foreman on that day. The next day, plaintiff reported the sofa incident to Sharon Lee, part-owner of defendant-employer. Defendant-employer did not prepare an accident report.
7. On 17 November 1995 defendant-employer sent plaintiff to Hart Industrial Clinic, where plaintiff was seen by Dr. Dan Nackley. Plaintiff reported his one to two month history of right hand symptoms and the accident of the preceding day. Plaintiff was diagnosed with a job-related right arm sprain and right hand paresthesias for which a splint and medication were prescribed. Plaintiff was given a work restriction for limited repetitive motion.
8. Plaintiff was seen again at the Hart Industrial Clinic on 21 November 1995 and several other occasions in November and December, 1995, with complaints of right shoulder pain and right hand numbness and paresthesias.
9. Dr. Scott McCloskey of Unifur Neurosurgical Services first examined plaintiff on 15 January 1996. At the time of that examination plaintiff indicated on an intake questionnaire that he was having back pain, but did not discuss any back complaints with Dr. McCloskey. The focus of Dr. McCloskey's evaluation was plaintiff's right upper extremity.
10. Dr. McCloskey diagnosed severe carpal tunnel syndrome for which he recommended surgical release. Dr. McCloskey also suspected that plaintiff had tardy ulnar palsy, or an irritation of the ulnar nerve at the right elbow and a tear of the rotator cuff of the right shoulder. A subsequent MRI was negative for a rotator cuff tear, but did indicate a large ganglion cyst in the area of the scapula. Dr. McCloskey believed that the ganglion cyst was causing suprascapular nerve compression for which he recommended surgery to release the suprascapular ligament.
11. On 1 February 1996, Dr. McCloskey performed a release of the right carpal tunnel release. On 5 March 1996, Dr. McCloskey performed surgery to release the right suprascapular ligament. During this surgery, Dr. McCloskey did not see the ganglion cyst which was indicated in the prior MRI.
12. Plaintiff continued to complain of right shoulder pain, elbow discomfort, and tingling in the fingers of the right hand following the surgical procedures. A repeat MRI of the shoulder was performed on 17 May 1996 which showed the ganglion cyst to be present, although it may have decreased in size. Nerve conduction studies of the right elbow were also performed on that date which were negative.
13. It is Dr. McCloskey's opinion, and the Full Commission accordingly finds, that Plaintiff's right carpal tunnel syndrome and his right suprascapular nerve entrapment are causally related to plaintiff's employment duties and the accident of 15 November 1995 when plaintiff caught the falling sofa frame. Plaintiff's job duties required repetitive use of his upper extremities. Plaintiff's employment placed him at an increased risk for the development of carpal tunnel syndrome and upper extremity nerve entrapment when compared to members of the general public not so exposed. The accident of 15 November 1995 aggravated plaintiff's right carpal tunnel symptoms which had recently surfaced and caused or materially aggravated his right shoulder condition.
14. Following his accident of 15 November 1995, plaintiff also began having lower back pain. However, the focus of his pain and problems continued to be his right upper extremity, and plaintiff did not seek medical attention for his back until July, 1996 when he complained to Dr. John de Perczel of Catawba Orthopaedic Specialists.
15. Plaintiff has been seen in follow-up for his back by Dr. Alfred Geissle, also of Catawba Orthopaedic Specialists. Dr. Geissele is of the opinion that plaintiff has degenerative disc disease at L4-5 and L5-S1, spondylolisthesis at L5-S1 and a right L5-S1 disc herniation. Dr. Geissele has recommended fusion surgery. Although plaintiff's degenerative disc disease and his spondylolisthesis most likely were pre-existing conditions, it is Dr. Geissele's opinion, and the Full Commission finds, that these back conditions were aggravated by plaintiff's injury by accident of 15 November 1995.
16. As a result of his injury by accident of 15 November 1995, plaintiff has been unable to earn wages in his former position with defendant-employer or in any other employment since 20 November 1995, with the exception of a period in December 1995 and January 1996 during which he was able to earn some wages in a light duty position.
 ***********
Based upon the foregoing findings of fact, the Full Commission concludes as follows:
 CONCLUSIONS OF LAW
1. As of 15 November 1995, plaintiff had an average weekly wage of $664.79, yielding a compensation rate of $443.22. G.S. § 97-2(5).
2. As a result of the repetitive nature of his employment duties, plaintiff developed carpal tunnel syndrome in his right hand. Plaintiff's carpal tunnel syndrome is due to causes and conditions which are peculiar to his employment which also placed him at an increased risk of developing carpal tunnel syndrome. Plaintiff's right hand carpal tunnel syndrome is compensable as an occupational disease pursuant to G.S. § 97-53(13).
3. On 15 November 1995, plaintiff sustained an injury by accident arising out of and in the course of his employment with defendant-employer which aggravated his carpal tunnel syndrome and injured his upper right extremity. G.S. § 97-2(6).
4. Plaintiff's right suprascapular nerve entrapment was caused or significantly aggravated to the point of symptom development, by the accident of 15 November 1995. G.S. § 97-2(6).
5. Plaintiff's accident of 15 November 1995 also aggravated plaintiff's pre-existing lower back condition to the point that this condition has become symptomatic and may require surgery. G.S. § 97-2(6).
6. As the result of his carpal tunnel syndrome and injury by accident on 15 November 1995, plaintiff is entitled to be paid by defendant temporary total disability compensation at the rate of $443.22 per week for the period of 20 November 1995 through the present and continuing until plaintiff returns to work or until further order of the Commission. G.S. § 97-29. Defendant is entitled to a credit against this compensation for the wages plaintiff was able to earn in a light duty position in December 1995 and January 1996. Id.
7. As the result of his carpal tunnel syndrome and injury by accident on 15 November 1995, plaintiff is entitled to have defendant pay for all medical expenses incurred. G.S. § 97-25.
 ***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission modifies and affirms the holding of the Deputy Commissioner and enters the following:
 AWARD
1. Subject to the attorney's fee approved herein and the credit to which defendant is entitled, defendant shall pay plaintiff temporary total disability compensation at the rate of $443.22 per week for the period of 20 November 1995 and continuing until plaintiff returns to work or until further order of the Commission. Such amount as has accrued shall be paid in a lump sum, subject to the attorney's fee approved herein.
2. Defendant is entitled to a credit against the compensation awarded above for the wages plaintiff was able to earn in a light duty position in December 1995 and January 1996.
3. Defendant shall pay all medical bills incurred by plaintiff as a result of his occupational disease of carpal tunnel syndrome and his injury by accident of 15 November 1995.
4. A reasonable attorney's fee of twenty-five percent of the compensation awarded plaintiff herein is approved for Plaintiff's counsel. Twenty-five percent of the compensation accrued and due plaintiff shall be deducted therefrom and paid directly to his counsel. Thereafter, every fourth check due plaintiff shall be paid directly to his counsel.
5. Defendant shall pay the costs.
 S/ _______________________ CHRISTOPHER SCOTT COMMISSIONER
CONCURRING:
S/ _____________________ DIANNE C. SELLERS COMMISSIONER
S/ _____________________ THOMAS J. BOLCH COMMISSIONER